## TULANE HOMESTEAD ASS'N v. PHILIP BOHRER REALTY CO., Inc., et al.

### No. 17272.

Court of Appeal of Louisiana. Orleans.

Nov. 27, 1939.

Louis H. Yarrut, of New Orleans, for Tulane Homestead Association in liquidation, appellant.

Samuel J. Goodman, R. B. Logan, and Rene R. Nicaud, all of New Orleans, for Reconstruction Finance Corporation, appellee.

McCALEB, Judge.

The plaintiff, Tulane Homestead Association in liquidation, as vendor and mortgagee of certain real estate owned by the Philip Bohrer Realty Company, Inc., foreclosed in these proceedings on its vendor's lien and mortgage and caused the real property to be sold. In accordance with the writ issued by the court, the property was sold by the Civil Sheriff on February 9, 1939, after due advertisement, and plaintiff, being the highest bidder at the sale, became the adjudicatee.

On May 3, 1939, plaintiff filed a rule against the Reconstruction Finance Cor-

poration, the Civil Sheriff and the Recorder of Mortgages to show cause why the following inscriptions, appearing on the mortgage certificate obtained by the Civil Sheriff in the name of the Philip Bohrer Realty Company, Inc., should not be cancelled:

1. "M.O.B. 1485/217 - Judgment in favor of State of Louisiana up to $116.00, interest, etc., as per certificate No. 208,-916 C.D.C.;

2. "M.O.B. 1507/107 - The subrogation by the State of Louisiana to the Reconstruction Finance Corporation of the judgment above mentioned;"

The Reconstruction Finance Corporation resisted plaintiff's rule and, after a trial of the same on an agreed stipulation of fact, the district judge, being of the opinion that the subrogation in favor of the Reconstruction Finance Corporation was valid and enforcible, dismissed the proceeding. Plaintiff has prosecuted this appeal from the adverse judgment.

The question presented for our determination is based upon the following state of admitted facts:

The State of Louisiana obtained a judgment against Philip Realty Company, Inc., in the principal sum of $116.00 plus penalties, attorney fees, costs, etc., for franchise taxes due to it in the matter entitled "State of Louisiana v. Philip Bohrer Realty Company, Inc., No. 208,916 of the Civil District Court for the Parish of Orleans". This judgment was duly recorded in the office of the Recorder of Mortgages for the Parish of Orleans in book 1485, folio 217. At the time of the recordation of this judgment, Philip Bohrer Realty Company, Inc., was the owner of two separate and distinct parcels of real estate, one of which was mortgaged to the Reconstruction Finance Corporation for a sum in excess of $10,000, and the other parcel (which is involved in the present proceeding) was mortgaged to the plaintiff. On February 28, 1935, the Reconstruction Finance Corporation foreclosed on its mortgage in the proceedings entitled "Reconstruction Finance Corporation v. Philip Bohrer Realty Company, Inc., No. 211,195 of the Civil District Court for the Parish of Orleans" and caused the property, which was encumbered by its mortgage, to be sold by the Sheriff on August 15, 1935. This property was adjudicated to the Reconstruction Finance Corporation for the sum of $1,000 at the

sheriff's sale. At the time of the adjudication of the property to the Reconstruction Finance Corporation, the mortgage certificate obtained by the sheriff, in connection with the foreclosure sale, bore the inscription of the judgment in favor of the State of Louisiana against Philip Bohrer Realty Company, Inc., for franchise taxes. The Reconstruction Finance Corporation thereafter, on January 28, 1936, paid the judgment in favor of the State of Louisiana and the Secretary of State, at the time of the payment, executed in its favor an instrument of subrogation. This subrogation was duly recorded in M.O.B. 1507, folio 107. After paying the judgment in favor of the State, the Reconstruction Finance Corporation caused the inscription of it in the mortgage office to be cancelled as against the property acquired by it in its foreclosure suit.

The plaintiff in rule maintains that the inscription of the judgment in favor of the State of Louisiana should be totally erased from the records of the mortgage office because the State of Louisiana has been paid in full for all taxes, penalties, etc., due under said judgment and that the inscription of the subrogation given by the Secretary of State to the Reconstruction Finance Corporation should likewise be cancelled for the reason that the subrogation is invalid in law.

On the other hand, the Reconstruction Finance Corporation contends that the Secretary of State had the power and authority to execute in its favor a conventional subrogation to the rights of the State in and to the judgment against Philip Bohrer Company, Inc., and that, alternatively, if it should be held that the Secretary of State was not so authorized, it has nevertheless become subrogated to the rights of the State by operation of law.

We first address our attention to the question as to whether the Secretary of State was empowered to execute a conventional subrogation of the rights of the State in and to the judgment it had against Philip Bohrer Realty Company, Inc. for franchise taxes. This specific proposition was presented to the Attorney General of this State on February 4, 1935, for his legal opinion. In declaring that the Secretary of State did not have the authority to subrogate a mortgage creditor, upon payment of the corporation franchise tax assessed against a particular corporation, to the rights of the State, he said:

"This Department is of the opinion that the Secretary of State, in the absence of direct warrant by law, cannot assign or transfer any judgment in his favor to a private individual or corporation. There is one instance of this authority of subrogating a third party to the rights and interest of the State, this is in the case of subrogation by the parish tax collector of the rights of the State to a person paying delinquent taxes for another. This authority is specifically granted under Act 170 of 1898. We have looked into the franchise tax law and find no authority given by the Legislature to the Secretary of State to transfer to another the rights of the State vested in the Secretary of State for the enforcement of this law.

"All that the Secretary of State can do is to accept payment from any one and issue a cancellation of the lien or judgment."

■ We fully concur with the view expressed by the Attorney General, which we find is sustained by respectable authority. See 25 Ruling Case Law, Sections 48 and 52, 61 Corpus Juris, Page 954, and 61, A.L. R. 589. Section 1228 of Volume 61 of Corpus Juris (Verbum Taxation) states the general rule at page 954 as follows:

"A state tax is not an ordinary debt subject to the control of the parties, and the taxing unit cannot assign the claim to a citizen and thereby subrogate him to the collecting rights of the taxing unit, *unless the law expressly confers such power.*" (Italics ours)

■ In Louisiana, as pointed out by the Attorney General's opinion, there is no statute authorizing the Secretary of State to grant a subrogation and it follows that he was without power to confer upon the Reconstruction Finance Corporation the right to pursue the remedies vested in the State under the Corporation Franchise Tax Law [Act No. 8 of 1932].

The next question to be determined is whether the Reconstruction Finance Corporation became subrogated, through operation of law, to the rights of the State when it paid to the Secretary of State the full amount of the judgment.

Counsel for the Reconstruction Finance Corporation assert that it has been legally subrogated to the State's rights under the judgment by virtue of Article 2161 of the Revised Civil Code, the pertinent part of which reads as follows:

"Subrogation takes place of right:
"1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages."

It is conceded by the parties to this case that the judgment in favor of the State of Louisiana against Philip Bohrer Realty Company, Inc., for franchise taxes was superior, as a lien against all of the property of the tax debtor, to the conventional mortgages of either the Reconstruction Finance Corporation or the plaintiff. Counsel for the Reconstruction Finance Corporation therefore maintain that, since their client has paid the judgment which was preferable to its mortgage, legal subrogation has taken place in its favor.

On the other hand, counsel for the plaintiff in rule contend that there has been no subrogation, legal or otherwise, because the Reconstruction Finance Corporation did not pay the judgment in favor of the State in its capacity as a mortgage creditor of the Philip Bohrer Realty Company, Inc., but did so as a purchaser of the property. In other words, it is argued that, when the Reconstruction Finance Corporation became the adjudicatee of the property mortgaged to it, it was required by law to retain in its hands a sum sufficient to discharge all prior liens on the real estate and that the money used by it, in payment of the State's tax lien, was part of the purchase price of the property. If this be true, it is certain that the payment cannot operate as a legal subrogation in favor of the Reconstruction Finance Corporation because the judgment has not been extinguished by it in its capacity as a mortgage creditor but has been paid out of monies technically belonging to the Philip Bohrer Realty Company, Inc.

It appears from the stipulation of fact filed in the record that, when the property was adjudicated to the Reconstruction Finance Corporation for $1,000, the mortgage certificate obtained by the Sheriff in connection with the foreclosure sale bore the inscription of the judgment in favor of the State against Philip Bohrer Realty Company; that, in order to obtain a sheriff's deed to the property adjudicated to it and in compliance with the requirements of the civil sheriff, the Reconstruction Finance Corporation paid to the State of Louisiana the amount of the judgment.

It is our opinion that, when the Reconstruction Finance Corporation became the

adjudicatee of the property upon its bid of $1,000, the purchase price was dedicated first to the payment of all liens and mortgages bearing on the realty which were superior in rank to the mortgage of the adjudicatee. Article 679 of the Code of Practice provides:

"When there exists a mortgage or privilege on the property put up for sale, the· sheriff shall give notice, before he commences the crying, that the property is sold *subject to all privileges and hypothecations of whatsoever kind they may be, with which the same is burdened, and with the condition that the purchaser shall pay in his hands whatever portion of the price for which the property shall be adjudicated, which may exceed the amount of the privileges and special mortgages to which such property is subject."* (Italics ours)

Accordingly, the Reconstruction Finance Corporation was not required to turn over the $1,000 purchase price to the sheriff as it became its duty, when the property was adjudicated to it, to discharge all privileges with which the real estate was burdened out of the purchase price and to pay over to the sheriff any excess of the price which might exceed the amount of these privileges. Hence, when the Reconstruction Finance Corporation paid the judgment in favor of the State, it used a portion of the purchase price of the property in making this payment for the purpose of obtaining the sheriff's deed to the property and (according to the stipulation of fact contained in the record) "in compliance with the requirements of the Civil Sheriff."

The view above expressed not only finds support in the Articles of the Code of Practice relative to judicial sales but also in the jurisprudence of the State.

In Sturges v. Taylor, 15 La.Ann. 285, it appeared that the testator of the plaintiff purchased two lots of ground, the property of the defendant, at a sheriff's sale for $500 subject to the payment of the mortgages and privileges existing on the same. At the time of the sale, a privilege existed on the property for the sum of $300 in favor of one Yarborough for materials furnished to the defendant and used in the construction of buildings on the premises. After the sheriff's sale, Yarborough obtained judgment against the defendant for the amount of his claim with a recognition of the privilege on the property sold. The amount of this judgment was paid by the plaintiff and she afterwards instituted suit for the purpose of being subrogated to all of the rights of Yarborough in the judgment obtained by him against the defendant. The court, in rejecting plaintiff's claim, cited Art. 679 of the Code of Practice and stated:

"The payment of the judgment against the defendant by the executrix of the purchaser, was but the performance of his own legal obligation, and did not give rise to any subrogation, by operation of law, to the rights of Yarborough, the judgment creditor, in favor of the purchaser or his legal representatives, *because he was bound to pay and extinguish the judgment with a portion of the price of the adjudication, or to abandon the property to the privileged creditor for that purpose."* (Italics ours)

In Barilleaux v. Toft, 5 La.App. 756, one Hoy was the owner of certain property in St. Mary Parish on which the St. Mary Building Association held a first mortgage and Barilleaux a second mortgage. This property was conveyed by him to a Miss Helen Toft for $350 and the assumption by her of the mortgages in favor of the building association and Barilleaux. Barilleaux later foreclosed on his second mortgage and the property was adjudicated to him for the sum of $2,000. Out of this purchase price, he turned over to the sheriff the sum of $1,232 to pay the first mortgage in favor of the St. Mary Building Association. After this mortgage was paid, Barilleaux requested the court to require the building association to transfer its mortgage note to him without reservation and with full subrogation of all of its rights. The court, in denying his right to a subrogation, declared:

"The sheriff, acting under the writ, sold the property of Miss Helen Toft upon which the vendor's lien of the Association and the junior mortgage of the plaintiff rested. The $2000.00 which the sheriff received was the price of the sale and were the individual funds of Miss Helen Toft, which the sheriff had received for her as a consideration from the adjudicatee or vendee, plaintiff herein. Out of the $2000.00, proceeds of the sale, the mortgage of the association was paid. The payment of this mortgage was therefore made by Miss Toft, through the sheriff, her legal agent, and custodian of the funds. The payment so made by the sheriff can not, by the subtlest reasoning, be rightly construed

158

as a payment made by plaintiff to the building association."

See, also, Randolph v. Stark, 51 La.Ann. 1121, 26 So. 59.

 Similarly in this case, when the Reconstruction Finance Corporation paid the judgment of the State of Louisiana, it did so with funds belonging to the Philip Bohrer Realty Company, Inc., and not with its own money and therefore it did not become legally subrogated to the rights of the State under the provisions of Article 2161 of the Code. It also follows that, irrespective of the lack of authority of the Secretary of State to grant a subrogation, there was no consideration paid by the Reconstruction Finance Corporation for the conventional subrogation it obtained.

For the reasons assigned, the judgment appealed from is reversed and it is now ordered that the rule of the Tulane Homestead Association in liquidation be and it is made absolute and the Recorder of Mortgages for the Parish of Orleans is ordered and directed to cancel and erase from the records of his office the inscription of the judgment in favor of the State of Louisiana for $116 with interest, etc., appearing in Mortgage Office Book 1485, Folio 217, and also the inscription of the subrogation by the State of Louisiana to the Reconstruction Finance Corporation recorded in Mortgage Office Book 1507, Folio 107. The defendant in rule, Reconstruction Finance Corporation, to pay all costs.

Reversed.